IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:21-CV-159-D

| | | |
|---|---|---|
| MICHAEL A. BAILEY, and <br> CHRISTIE B. BAILEY, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | **ORDER** |
| CERTAIN INTERESTED <br> UNDERWRITERS AT LLOYD'S <br> LONDON SUBSCRIBING TO <br> POLICY NO. BWD652420, | ) <br> ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

On September 8, 2021, Michael A. Bailey and Christie B. Bailey ("plaintiffs" or "the Baileys") filed a complaint in Carteret County Superior Court alleging breach of contract and related claims under North Carolina law against Certain Underwriters at Lloyd's London Subscribing to Policy No. BWD652420 ("defendants") [D.E. 1-1]. On October 22, 2021, defendants removed the action to this court [D.E. 1]. On October 29, 2021, defendants filed an unopposed motion to stay pending the conclusion of an appraisal process of the Baileys' insurance claim [D.E. 6]. On November 1, 2021, the court granted the motion to stay [D.E. 7].

On July 12, 2022, after the appraisal, the Baileys moved for leave to file an amended complaint and lift the court's stay [D.E. 11]. On August 9, 2022, the court granted the Baileys' motion and lifted the stay [D.E. 14]. On August 22, 2022, the Baileys filed an amended complaint alleging breach of contract, bad faith, violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and negligence [D.E. 15]. On September 6, 2022, defendants moved to

dismiss the amended complaint for failure to state a claim upon which relief can be granted [D.E. 16] and filed a memorandum in support [D.E. 17]. See Fed. R. Civ. P. 12(b)(6). On October 17, 2022, the Baileys filed a memorandum in opposition [D.E. 21]. On October 31, 2022, the defendants replied [D.E. 22]. As explained below, the court grants defendants' motion to dismiss and dismisses with prejudice the amended complaint.

I.

In August 2018, the Baileys bought an oceanfront home with customized furnishings, tile decking, and a top-floor observation room in Carteret County, North Carolina for personal use and to rent as a vacation property. See Am. Compl. [D.E. 15] ¶ 7. When the Baileys purchased the property, they obtained an insurance policy, number BWD65240, with effective dates from August 15, 2018, to August 15, 2019. See id. at ¶ 11. The policy had four areas of coverage, "Dwelling" or "A"; "Other Structures" or "B"; "Personal Property" or "C"; and "Loss of Use/Rents" or "D." See id. at ¶ 13. At all relevant times, the Baileys had fully paid and were current on all relevant premiums. See id. at ¶ 16.

In September 2018, Hurricane Florence produced high sustained winds and gusts of over 100 miles per hour and heavy rainfall in Carteret County. See id. at ¶ 17. The hurricane substantially damaged the Baileys' property, including interior damage, water damage, electrical damage, floor damage, and other related damage to the property and the items within the residence. See id. On September 18, 2018, the Baileys discovered the damage to the property and notified defendants. See id. at ¶¶ 21–22.

On October 5, 2018, defendants' field adjuster met with the Baileys. See id. at ¶ 22. During this meeting, the adjustor visually inspected the property and concluded that the damage to the

2

property was relatively minor. See id. at ¶¶ 27–30. After this meeting, the Baileys undertook repairs that cost approximately $170,000. See id. at ¶ 31.

The repairs were insufficient. See id. The Baileys had to stop renting the property following the repairs when tenants complained of significant water intrusion when it rained. See id. at ¶ 32. The Baileys hired several experts who, after reassessing the property, noted that Hurricane Florence had led to structural shifts in the property which let excess water into the residence. See id. at ¶ 35. The Baileys contend that the defendants' adjustor inadequately assessed the storm damage and falsely represented to the Baileys the extent of the damages. See id. at ¶ 44. The newly discovered damages led to significantly more expensive replacement and repair and forced the Baileys not to rent the property. See id. at ¶¶ 40–43, 46, 55. Although the defendants continued to make adjusted payments during the Baileys' reassessment of the damage, the Baileys continued to dispute the defendants' evaluation of the damage to the property and loss of rent. See id. at ¶¶ 43, 47, 57.

On April 27, 2021, pursuant to the insurance policy, the parties entered into an agreement to reassess the damage to the property and defendants' initial payout. See id. at ¶ 58. On November 10, 2021, the appraisal panel entered an award of $1,002,114 to the Baileys, a significantly higher payout than the original. See id. at ¶ 60. The defendants have paid the Baileys the $1,002,114 award entered by the appraisal panel. See [D.E. 17] 3. The Baileys do not dispute this contention.

II.

Defendants move to dismiss the complaint under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must

3

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may consider an insurance policy attached to an amended complaint to be part of the complaint. See Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("exhibits to the complaint are a part of the complaint which was subject to the motion to dismiss under Rule 12(b)(6)"). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

4

A.

The Baileys allege that defendants "breached [the insurance contract] by failing to provide the benefits, coverage, and payments due thereunder to Plaintiffs." Am. Compl. ¶ 65. The Baileys also allege that defendants breached the contract by failing to provide timely payments under the policy and by "misrepresenting the scope of the damage to the Property" and "wrongfully delaying the claim investigation process[.]" [D.E. 21] 9. Defendants respond that the contract forecloses the Baileys' breach of contract claim. See [D.E. 17] 5.

A breach of contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. See McLamb v. T.P., Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). A breach of a contract occurs where there is "[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater v. Barker, 172 N.C. App. 441, 447, 617 S.E.2d 113, 117 (2005) (quotation omitted), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006); see Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 517 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished). An insurance policy is a contract, and the policy's provisions govern the rights and duties of the contracting parties. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990). The insured party "has the burden of bringing itself within the insuring language of the policy." Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 606, 630 S.E.2d 221, 229 (2006) (quotation omitted).

The plain language of the contract defeats the Baileys' breach of contract claim regarding payments. The contract states that defendants will pay within 60 days after the amount is finally

5

determined. [D.E. 15-2] 22. The amount is determined by "proof of loss" and: "1. Reaching an agreement with you; 2. . . . [E]ntry of a final judgment; or 3. [The] filing of an appraisal award with us." Id. (emphasis added). Defendants' duty under the contract to make additional loss payments (i.e., the amount in dispute) only arose 60 days after the appraisal panel filed the appraisal award with the defendants. The amended complaint does not state that defendants failed to timely pay $1,002,114 following the appraisal award on November 10, 2021. Therefore, the amended complaint fails to plausibly allege that defendants breached their obligation to timely pay the disputed loss amount.

To the extent the Baileys contend that defendants' failure initially to pay the full amount constitutes a breach of contract, the court rejects the argument. The policy establishes the mechanism for disputing the amount of loss: "If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss . . . . A decision agreed to by any two [appraisers] will set the amount of loss." [D.E. 15-2] 21. The Baileys fail to plausibly allege that defendants ignored the process. In North Carolina, when an insurance contract contains a dispute resolution mechanism, there is "no obligation to make a loss payment until the parties have either agreed on the amount of the loss or the appraisal process has been completed." Patel v. Scottsdale Ins. Co., 221 N.C. App. 476, 483, 728 S.E.2d 394, 399 (2012); Rose Hill United Methodist Church v. Church Mut. Ins. Co., No. 7:20-CV-00254, 2022 WL 2705242, at *6 (E.D.N.C. July 12, 2022) (unpublished); Guessford v. Pa. Nat. Mut. Cas. Ins. Co., 918 F. Supp. 2d 453, 462 (M.D.N.C. 2013).[1] Thus, the Baileys' breach of contract claim fails.

---

[1] The Baileys' response memorandum appears to merge aspects of their UDTPA and breach of good faith arguments regarding how defendants handled the claim with their breach of contract claim. See [D.E. 21] 9. These "allegations about claims-handling practices" are not relevant to the breach of contract claim, but "instead speak to [defendants'] potential liability under the tort and UDTPA claims." Rose Hill, 2022 WL 2705242, at *6.

6

B.

The amended complaint is unclear concerning the legal theories underpinning the Baileys' claims. The Baileys' memorandum, however, clarifies that their claims include a claim for common law breach of good faith and fair dealing and a UDTPA claim for alleged violations of N.C. Gen. Stat. § 58-63-15(11). See [D.E. 21] 12, 17.[2] The court addresses each claim in turn.

1.

Under North Carolina law, every contract contains "an implied covenant of good faith and fair dealing[.]" Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (quotation omitted). Under the covenant, "neither party will do anything which injures the right of the other to receive the benefits of the agreement." Robinson v. Deutsche Bank Nat'l Tr. Co., No. 5:12-CV-590, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013) (unpublished) (quotation omitted). Where parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract." McKinney v. Nationstar Mortg., LLC, No. 5:15-CV-637, 2016 WL 3659898, at *8 (E.D.N.C. July 1, 2016) (unpublished) (alteration and quotation omitted); see Lord of Shalford v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000), aff'd, 18 F. App'x 147 (4th Cir. 2001) (per curiam) (unpublished); Murray v. Nationwide Mut. Ins. Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996).

North Carolina law recognizes "a separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances involving special relationships between parties, such as cases involving contracts for funeral services and insurance." Michael Borovsky Goldsmith,

---

[2] Defendants' motion to dismiss includes an argument about a UDTPA claim independent of alleged violations of N.C. Gen. Stat. § 58-63-15(11). See [D.E. 17] 20. The Baileys do not address the argument in their response, and it is not clear from the amended complaint that the Baileys are asserting an independent UDTPA claim. Accordingly, the court does not address the argument.

7

LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 313–14 (E.D.N.C. 2019) (cleaned up); Ada Liss Grp. (2003) v. Sara Lee Corp., No. 1:06-CV-610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009) (unpublished), report and recommendation adopted by 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010) (unpublished). In the insurance context, a claim for breach of the covenant of good faith and fair dealing has three elements: "(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." LRP Hotels of Carolina v. Westfield Ins. Co., No. 4:13-CV-94, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014) (unpublished) (quotations omitted); Gandecha v. Metro. Prop. & Cas. Ins. Co., No. 5:13-CV-688, 2014 WL 4243797, at *5 (E.D.N.C. Aug. 26, 2014) (unpublished).

Legitimate and honest disagreement over the scope of coverage under an insurance contract is not bad faith. Rather, "when an insurer denies a claim because of a legitimate, 'honest disagreement' as to the validity of the claim, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or any tortious conduct on the part of the insurer." Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 239 (4th Cir. 2001) (per curiam) (unpublished); see Universal Underwriters Ins. Co. v. Lallier, 334 F. Supp. 3d 723, 736 (E.D.N.C. 2018). Bad faith does not include an "honest disagreement or innocent mistake." Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 421, 424 S.E.2d 181, 185 (1993) (quotation omitted); Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396, 331 S.E.2d 148, 155 (1985). Aggravated conduct includes "fraud, malice, gross negligence, [and] insult" as well as actions denying coverage "willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." Universal Underwriters Ins., 334 F. Supp. 3d at 736 (quotation omitted); see Guessford, 918 F. Supp. 2d at 466; Lovell, 108 N.C. App. at 422, 424 S.E.2d at 185.

8

The Baileys argue that they plausibly allege that defendants' "adjuster intentionally misrepresented the scope of the damage that led to [defendants'] preappraisal payments" and that defendants "further acted in bad faith by willfully, oppressively forestalling of payment in order to bring financial pressure upon [the Baileys] for [defendants] own financial gain." [D.E. 21] 13; see Am. Compl. ¶¶ 71–72, 79. Defendants respond that the Baileys' memorandum improperly recharacterize claims in the amended complaint. See [D.E. 22] 6.

The Baileys fail to plausibly allege breach of common law good faith and fair dealing for insurance policies. The amended complaint does not plausibly allege that the adjustor intentionally hid the scope of the damage from the Baileys. Rather, it asserts, without further support, that the "adjuster purposely undervalued the loss, as a more invasive adjustment would have revealed the scope of damage." Am. Compl. ¶ 72. The amended complaint also alleges that the adjuster "based his scope of the initial adjustment on visuals alone, which is a wholly inadequate adjustment." Id. at ¶ 71. Thus, the amended complaint only alleges that the adjustor failed to make a sufficiently thorough inspection, not that the adjustor made a thorough inspection and intentionally misled the Baileys concerning the extent of the damage.[3]

The Baileys also have failed to plausibly allege an aggravating circumstance. See Universal Underwriters Ins., 334 F. Supp. 3d at 736; Lovell, 108 N.C. App. at 422, 424 S.E.2d at 185; Guessford, 918 F. Supp. at 466. Indeed, defendants made several additional payments to the Baileys during the investigation. See, e.g., Am. Compl. ¶ 43. Such payments reflect a good faith attempt to resolve the dispute rather than fraud or deceit. The Baileys' conclusory allegation alone that the

---

[3] This interpretation is the only plausible reading of the amended complaint. The alternative is that the amended complaint alleges, simultaneously, that the adjustor made an inspection on "visuals alone" but somehow knew the actual scope of the damage even though this would have required "a more invasive" inspection than the adjustor allegedly performed. Id. at ¶¶ 71–72.

9

adjuster "purposely undervalued" the claim does not sufficiently allege an aggravating factor. See Iqbal, 556 U.S. at 677–80.

In opposition, the Baileys cite Rose Hill. In Rose Hill, the court denied a motion to dismiss a bad faith claim in light of plausible allegation that a defendant's

> agents saw specific structural features during their inspection, omitted these features from their estimates without a good-faith basis for doing so, sought to settle the claim based on a replacement cost estimate that was roughly one-third of what independent appraisers and construction vendors agreed to be necessary, and engaged in other forms of aggravated conduct.

Rose Hill, 2022 WL 2795242, at *10. The facts alleged in the Baileys' amended complaint and the absence of any plausible allegations of aggravated conduct or bad-faith attempts to settle bear no resemblance to the facts present in Rose Hill. Thus, the Baileys' common law breach of good faith and fair dealing claim fails.

2.

The Baileys assert violations of the UDTPA and statutory good faith under N.C. Gen. Stat. 58-63-15 (11). Although N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action, a plaintiff may obtain relief for violations of N.C. Gen. Stat. § 58-63-15(11) under the UDTPA. Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 69–71, 529 S.E.2d 676, 682–83 (2000); see Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018); Burch v. Lititz Mut. Ins. Co., No. 7:12-CV-107, 2013 WL 6080191, at *8 (E.D.N.C. Nov. 19, 2013) (unpublished). To state a UDTPA claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. Kelly, 671 F. Supp. 2d at 798; Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); see Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020). "[W]hether an act or practice is an unfair or deceptive

10

practice ... is a question of law for the court." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006). An insurance company that violates N.C. Gen. Stat. § 58-63-15(11) also violates the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Walker, 362 N.C. at 70–71, 653 S.E.2d at 398–99; Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002); Barbour, 361 F. Supp. 3d at 573. Although N.C. Gen. Stat. § 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a UDTPA claim does not. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 643–44 (M.D.N.C. 2002).

A "mere breach of contract, even if intentional, is not an unfair or deceptive act under [the UDTPA]." Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 41–42, 626 S.E.2d 315, 323 (2006); see PCS Phosphate Co. v. Norfolk S. Co., 559 F.3d 212, 224 (4th Cir. 2009); Walker, 362 N.C. at 72, 653 S.E.2d at 399; Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019); Gray, 352 N.C. at 75, 529 S.E.2d at 685; Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992). North Carolina law "does not permit a party to transmute a breach of contract claim into a ... UDTPA claim ... because awarding punitive or treble damages would destroy the parties' bargain . . . ." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). If substantial aggravating circumstances accompany a breach of contract, then those circumstances can create an UDTPA claim. Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700; see Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters,

11

Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981). Generally, such aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements. See Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished) (collecting cases).

The Baileys allege that defendants engaged in numerous unfair claim settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11). See Am. Compl. ¶¶ 68–88. Specifically, the Baileys seek relief under subsections (a), (c), (d), (f), (g), and (h):

    a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

. . .

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

. . .

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

. . . [and]

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled.

N.C. Gen. Stat. § 58-63-15(11); see Am. Compl. ¶¶ 68–88.

As for subsection (a), the Baileys claim the amended complaint plausibly alleges that the "field adjuster intentionally misrepresented the scope of the property damage and intentionally

12

undervalued the damage amounts to lower Defendant's payment obligation to Plaintiffs." [D.E. 21] 19; see Am. Compl. ¶¶ 29, 44, 79(e). In cases alleging fraud or misrepresentation, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The particularity requirements of Rule 9(b) apply to fraud-related UDTPA claims. See Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015); Packrite, LLC v. Graphic Packaging Int'l, LLC, No. 1:17-CV-1019, 2020 WL 7060395, at *7 (M.D.N.C. Dec. 2, 2020) (unpublished).

Under Rule 9(b), the Baileys fail to plausibly allege a violation of subsection (a). The amended complaint only nakedly asserts that the adjuster "purposely undervalued the loss" and that defendants "misrepresented pertinent facts or insurance policy provisions." Am. Compl. ¶¶ 72, 79(e). The Baileys do not plausibly allege that the adjuster or defendants had knowledge of the actual extent of the damage and affirmatively misrepresented these facts to the Baileys. Thus, the Baileys' claim under subsection (a) fails.

As for subsection (c), the Baileys allege that the defendants' adjuster made only a visual inspection and that defendants had "received communication from the North Carolina's Department of Insurance to conduct a more invasive inspection." [D.E. 21] 24; see Am. Compl. ¶¶ 28, 30. The amended complaint, however, only alleges that the Department of Insurance sent a general letter to all insurers regarding the need to do "more invasive inspections" on the coast. See Am. Compl. ¶ 30. The Baileys do not allege what this letter actually was (e.g., a demand from the government, a best practices letter, or a new regulation). The amended complaint also fails to plausibly allege that this letter alone made visual inspections by insurers on the coast unreasonable. The amended complaint does not make any allegations as to defendants' internal standards for investigation of claims, let alone a plausible allegation that defendants' policies failed to establish "reasonable

13

standards for the prompt investigation of claims." Thus, the Baileys' claim under subsection (c) fails.

As for subsection (d), the Baileys do not plausibly allege that the adjuster's visual inspection was unreasonable and failed to take into consideration the opinion of Baileys' engineer. [D.E. 21] 24-25; see Am. Compl. ¶¶ 27, 102. Notably, the visual inspection was not the only information defendants relied upon when continuing to dispute the Baileys' loss amount. Defendants hired their own engineers to inspect the property and based their denial of full coverage, in part, on the conclusions of the engineers. See Am. Compl. ¶ 93(a). Reliance on experts' reports generally does not constitute "unscrupulous [or] unethical" behavior sufficient to support a UDTPA claim. Nelson, 177 N.C. App. at 612, 630 S.E.2d at 233. Moreover, the amended complaint only alleges that defendants' experts came to inaccurate conclusions, not that the experts engaged in fraud or deception on behalf of the defendants. See Am. Compl. ¶ 93(a).

In opposition, the Baileys cite Browder v. State Farm Fire & Cas. Co., No. 120-CV-00026, 2020 WL 7696092, at *5 (W.D.N.C. Dec. 28, 2020) (unpublished), and argue that defendants' investigation was unreasonable. Browder, however, is distinguishable. In Browder, the plaintiffs alleged that State Farm did not consider expert assessments that State Farm itself had requested and that this failure violated State Farm's own internal best practices policy. Browder, 2020 WL 7696092, at *5. In contrast to Browder, the Baileys have not alleged such conduct here. Thus, the Baileys' claim under subsection (d) fails.

As for subsections (f) and (g), the Baileys contend they plausibly allege that defendants' refusal to pay the Baileys' claimed loss amount was unreasonable and that whether the defendants had a reasonable basis to withhold payment "is misplaced at the Rule 12 phase." [D.E. 21] 20; see Am. Compl. ¶¶ 71, 74, 75, 81, 85, 93(c). The Baileys also contend they plausibly allege that

14

defendants "went to great measures to delay its obligations to [the Baileys] despite the loss being covered." [D.E. 21] 22. Defendants respond that defendants only disputed the amount of damage, not whether the damage was actually covered, and that it "never became clear that [the Baileys] were entitled to anywhere near what they claimed . . . ." [D.E. 22] 9.

At the Rule 12 stage, courts may determine whether a plaintiff plausibly alleges that liability had become "reasonably clear." Elliott v. Am. States Ins. Co., 883 F.3d 384, 398 (4th Cir. 2018). The facts in the amended complaint and the final appraisal board award demonstrate that the amount of liability was not "reasonably clear" before the final appraisal award. See, e.g., Am. Compl. ¶ 60. To the extent that the Baileys contend that defendants' dispute of the loss amount violates subsection (f) and (g), a mere disagreement between a policy holder and an insurance company "does not transform a run of the mill insurance dispute into a tort cognizable under Section 75–1.1." Clear Creek Landing Home Owners' Ass'n Inc. v. Travelers Indem. Co., No. 1:12cv157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (unpublished); Busch v. Ohio Nat. Life Assur. Corp., No. 5:09-CV-355, 2011 WL 902298, at *6 (E.D.N.C. Mar. 14, 2011) (unpublished). Moreover, the Baileys do not plausibly allege that defendants believed the claim was worth the amount the Baileys claimed but disputed the claim in order to force the Baileys to litigate. See Majstorovic v. State Farm Fire & Cas. Co., No. 5:16-CV-771, 2018 WL 1473427, at *7 (E.D.N.C. Mar. 24, 2018) (unpublished). Thus, the Baileys' claims under (f) and (g) fails.

As for subsection (h), the Baileys contend they plausibly allege that the adjuster's initial assessment of $166,591.89 in damages constituted an attempt to "settle the claim for less than the amount to which a reasonable man would have believed he was entitled" and that the final appraisal award of $1,002,114 demonstrates that the initial amount was unreasonable. [D.E. 21] 20; see Am. Compl. ¶¶ 60, 75. Defendants, however, ultimately paid the whole amount of the appraisal award

15

after going through the dispute resolution process. "The fact that [plaintiff] later received more money through the appraisal process does not show bad faith" or demonstrate a violation of subsection (h). See, e.g., Fortson v. Garrison Prop. & Cas. Ins. Co., No. 1:19-CV-294, 2022 WL 198782, at *8 (M.D.N.C. Jan. 13, 2022) (unpublished). Also, as discussed, the Baileys do not plausibly allege that defendants' earlier payments under the policy were sufficiently unreasonable to violate the UDTPA. Thus, the Baileys' claim under subsection (h) fails. Because the court dismisses the Baileys' N.C. Gen. Stat. § 58-63-15(11) claims, the court does not reach the parties' arguments about damages under the UDTPA.

C.

The Baileys assert a negligence claim. See Am. Compl. ¶¶ 100–07. Defendants argue that North Carolina law bars separate actions for negligence premised on a mere breach of contract. See [D.E. 17] 25. "Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978), rejected in part on other grounds by Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc., 313 N.C. 230, 328 S.E.2d 274 (1985); Braswell Egg Co., Inc. v. Poultry Mgmt. Sys., Inc., 481 F. Supp. 3d 528, 542 (E.D.N.C. 2020); Gen. Cas. Co. of Wis. v. Murphy-Hoffman Co., No. 5:20-CV-376, 2020 WL 6173547, at *2 (E.D.N.C. Oct. 21, 2020) (unpublished); CDI Corp. v. HCL Am., Inc., No. 5:17-CV-550, 2019 WL 1083775, at *3 (E.D.N.C. Mar. 7, 2019) (unpublished); Wilkins v. Wachovia Corp., No. 5:10-CV-249, 2011 WL 1134706, at *2 (E.D.N.C. Mar. 24, 2011) (unpublished). After all, "parties to a contract do not thereby become each others' fiduciaries; [therefore,] they generally owe no special duty to one another beyond the terms of the contract[.]" Broussard, 155 F.3d at 347 (quotation omitted); Branch Banking & Trust Co., 107 N.C. App. at 61, 418 S.E.2d at 699.

16

To pursue a tort claim and a breach of contract claim concerning the same conduct, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (quotation omitted) (collecting cases); see Broussard, 155 F.3d at 346; Strum v. Exxon Co., 15 F.3d 327, 330–31 (4th Cir. 1994); Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 362 (W.D.N.C. 1997); Paine, Webber, Jackson & Curtis, Inc. v. Stanley, 60 N.C. App. 511, 516–17, 299 S.E.2d 292, 295–96 (1983). Moreover, North Carolina courts have "carefully circumscribed" this independent duty requirement. Strum, 15 F.3d at 331. In so doing, North Carolina courts strove to keep tort and contract law (including law related to warranties) within their separate spheres. Cf. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986); Kelly, 671 F. Supp. 2d at 791.

The Baileys allege that defendants breached a duty to them by "conducting a flawed investigation and by relying on said investigation in adjusting the loss and in specifically directing [the Baileys] to make certain repairs" and by "failing to reasonably administer the claim; thus, causing excessive delay." Am. Compl. ¶¶ 102, 106. However, defendants' alleged independent duty to conduct an investigation, adjust the loss, and administer the claim are indistinguishable from defendants' duty under the insurance policy. See, e.g., Am. Select Ins. Co. v. Nat. Blend Vegetable Dehydration, LLC, No. 4:17-CV-178, 2019 WL 1317712, at *3 (E.D.N.C. Mar. 22, 2019) (holding that an insurers duty to take "reasonable care or competence in obtaining or communicating information regarding insurance coverage" does not constitute an independent duty separate from the underlying insurance contract). Neither the amended complaint nor the Baileys' memorandum in opposition cite any contractual language or specific statements of the defendants that created any duty independent of the contract.

17

The Baileys also contend that the adjuster "specifically direct[ed] [them] to make certain repairs." Am. Compl. ¶ 102. This repeated allegation, however, contradicts the terms of the policy, which states that adjusters will only recommend repair if the defendants exercise an "Our Option" provision of the contract. See [D.E. 15-2]. The Baileys do not plausibly allege that the adjuster or defendants specifically directed the Baileys to make certain specific repairs. Moreover, the amended complaint does not allege that these instructions created a separate or independent duty separate from the contract.

In opposition, the Baileys cite Hetzel v. JPMorgan Chase Bank, N.A., No. 4:13-CV-236, 2014 WL 7336863 (E.D.N.C. Dec. 22, 2014) (unpublished). Hetzel involved alleged claims of mishandling funds concerning a bank loan. See Hetzel, 2014 WL 7336863, at *7. The Hetzel court did not dismiss the negligence claim because it found that plaintiff's plausibly alleged "a failure to exercise due care." Id. The mismatch between the terms of the loan contract and the alleged tort prevented dismissal of the claim. Id. Unlike in Hetzel, there is no such mismatch between the terms of the policy and the alleged breaches of duty in the amended complaint. Accordingly, the Baileys' negligence claim fails.

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 16] and DISMISSES WITH PREJUDICE the amended complaint. The clerk SHALL close the case.

SO ORDERED. This 17 day of May, 2023.

JAMES C. DEVER III
United States District Judge